# CHARLESTON.

MOORE v. GAINER *et al.*

Submitted March 21, 1903.   Decided April 25, 1903.

1. FRAUDULENT CONVEYANCE.

   When a conveyance in favor of a relative leaves a man without means to satisfy his creditors, it is the basis of a strong suspicion of fraud; it is *prima facie* fraudulent, and calls upon the grantee to furnish strong proof of the *bona fides of the* transaction.   (p. 410).

2. SYLLABUS APPROVED.

Point 3 of the syllabus in *Knight* v. *Nease, et al.*, decided at the present term, applied. (p. 410).

Appeal from Circuit Court, Randolph County.

Bill by S. A. Moore against S. W. Gainer and others. Decree for defendants, and plaintiff appeals.

*Reversed.*

W. T. GEORGE, for appellant.

HARDING & HARDING, for appellees.

MILLER, JUDGE:

On the 10th day of August, 1899, appellant, S. A. Moore, commenced his suit in equity in the circuit court of Randolph County, against W. C. Gainer, S. W. Gainer, M. L. Gainer, J. N. B. Crim and A. B. Coberly; and at the September rules then next ensuing, filed his bill in the cause to set aside a certain deed alleged to be fraudulent and void, executed by W. C. Gainer and wife to S. W. Gainer, bearing date on the 11th day of March, 1897, which conveyed to said S. W. Gainer sixty-nine acres of land, described therein. Said S. W. Gainer filed his demurrer to the bill, which was overruled. He then answered it, denying all of the material allegations thereof, to which answer the plaintiff replied generally. There was no appearance by any of the other defendants. Depositions were taken by both plaintiff and defendant, S. W. Gainer, and filed in the cause.

On the 4th day of May, 1901, the cause was heard upon the bill, answer of S. W. Gainer thereto, and general replication to the answer; bill taken for confessed as to all of the other defendants, and upon the depositions. Upon consideration thereof the court dismissed the bill, and decreed that plaintiff should pay the costs of said suit. From this decree Moore appeals, and assigns as error that the circuit court should not have refused him the relief prayed for; and should not have dismissed his bill.

It is alleged in the bill that on the 22nd day of March, 1897, before one D. E. Coberly, a justice of said county, plaintiff recovered a judgment against said W. C. Gainer, M. L. Gainer and A. B. Coberly for $254.53; and that said judgment was for merchandise and cash furnished by plaintiff to said W. C. and

M. L. Gainer, during the years 1895, 1896 and 1897; that at the time said credit was given by plaintiff, W. C. Gainer owned said sixty-nine acres of land; that on the 11th day of March, 1897, said W. C. Gainer, with intent to hinder, delay and defraud plaintiff in the collection of his said demand, fraudulently conveyed the whole of his said real estate to his uncle, S. W. Gainer, for a pretended consideration of $650.00; that no part of said consideration mentioned in the deed was ever paid to said W. C. Gainer; and that said conveyance was a scheme on the part of W. C. Gainer and his uncle, S. W. Gainer, to cheat and defraud plaintiff out of his said demand. Plaintiff further alleges that, in addition to the above mentioned judgment, said W. C. Gainer is indebted to him as assignee of said J. N. B. Crim, upon certain notes then in judgment, amounting to about $300.00.

The answer of said S. W. Gainer denies all fraud, or participation in any fraud, and all notice of fraudulent intent on the part of said W. C. Gainer in the execution or delivery to him of said deed, and avers that the said deed was made upon and for a valuable consideration, actually paid by him, in good faith as set forth in said deed.

The deed recites the consideration thereof to be all his— said S. W. Gainer's—right, title and interest in one bond of two hundred and fifty dollars, paid in stock by him to the Montrose Oil Company; two hundred dollars to be paid in twelve months from that date; and two hundred dollars to be paid on or before the 11th day of March, 1899, with interest on each of said last mentioned sums from the date of the deed, and for which the grantee executed his two several promissory notes, payable to W. C. Gainer as aforesaid; and to secure the payment of which a lien was reserved on the face of the deed on the land. The deed was prepared and the acknowledgment thereof taken and certified by D. E. Coberly, justice, another nephew of S. W. Gainer, and cousin of W. C. Gainer. It was admitted to record on the 12th day of March, 1897. It is shown by the evidence that the two notes, shortly after their execution, and in the same month, were taken by W. C. Gainer to one C. C. Coberly, a son-in-law of S. W. Gainer, and cousin of W. C. Gainer, who lived some distance away, and sold and assigned to him for $285.00 cash; but it is also shown by C. C. Coberly's

evidence that he knew nothing personally about the sale of the
land; that he had no knowledge or notice of W. C. Gainer's
indebtedness, except that it was rumored that he was in debt;
that he bought the notes at a discount of $115.00 and paid W.
C. Gainer $285.00 therefor; and that he shaved or traded in
paper to some extent. He also states that he was not requested
by S. W. Gainer to buy the notes. After the assignment there-
of, S. W. Gainer made a payment or payments to C. C. Coberly
on one of the notes, and a proper credit was endorsed thereon.
On the 4th day of October, 1899, S. W. Gainer made settle-
ment with C. C. Coberly of the amount due on the notes, and
then sold and conveyed to him, by deed of that date, the sixty-
nine acres of land for the consideration of $500.00. This
deed recites the payment of $315.00 cash; $35.00 to be paid
October 4, 1900; and $100.00 October 4, 1901, with interest
on both of said sums from that date; for which sums said
Coberly executed his two promissory notes to S. W. Gainer;
and to secure the payment of which, a lien was retained on the
land on the face of said deed. The said $315.00 cash payment
was made up of $50.00 or $55.00 cash paid by Coberly to S.
W. Gainer, the balance due on one of the $200.00 notes, and the
other one, principal and interest in full. Said D. E. Coberly,
justice, who was in the habit of preparing deeds in that neigh-
borhood also wrote the last mentioned deed, and took and cer-
tified the acknowledgment of the signatures of S. W. Gainer
and wife thereto. A notice of *lis pendens* had been duly filed,
on the 10th day of August, 1899, the day on which said suit
was instituted.

As to said W. C. Gainer, it is shown that he was not only in-
debted to the plaintiff and to said Crim at the time of his con-
veyance of said land in the amounts of said two judgments,
respectively, but was also liable as surety for his brother, M.
L. Gainer. The amount of his last mentioned liability is not
definitely fixed, but was supposed to be about $300.00. The
land was worth, when conveyed by him to S. W. Gainer, about
$500.00. This was all the real estate owned by him. He also
had two young horses, or, as a witness stated, one horse and one
cow. Shortly before he conveyed the land to his uncle, he had
offered to convey it to H. T. Lawson, another uncle, saying to
Lawson at the time, that he was on M. L. Gainer's notes "for

a right smart of money," that "the estate would not pay out; and that he was not afraid to trust Lawson on a sham; that he wanted Lawson to deed the land back to his (Gainer's) wife twelve months afterwards." Lawson, however, would have nothing to do with the matter. Gainer then offered to convey the land to C. J. Schoonover, another relative, making to him substantially the same statements which he had made to Lawson; but Schoonover also declined to take a deed. After his conveyance to said S. W. Gainer, he stated to, or in the hearing of, at least three persons, that the said deed was a sham. There are other facts and circumstances disclosed by the record tending to prove fraud on the part of W. C. Gainer in this transaction. He did not testify as a witness in the cause.

So far as W. C. Gainer is concerned, the evidence proves that he executed and delivered said deed to his uncle with intent to delay, hinder and defraud the plaintiff and others to whom he was liable, in the collection of their demands against him.

However, it sufficiently appears that S. W. Gainer was and is a purchaser of the land for a valuable consideration; and unless he had notice of the said fraudulent intent of his grantor, W. C. Gainer, at the time of said conveyance, his title to the land is not affected thereby, and cannot be disturbed by this suit.

Plaintiff proves the kinship of all the parties to the transaction; that the deed was prepared by, and executed and acknowledged before, Justice D. E. Coberly, late in the evening of the 11th day of March, 1897; that it was taken to the clerk's office the next day by the grantee, and lodged for record therein; that all of the parties, except C. C. Coberly, lived in the same neighborhood; that plaintiff had mailed to the said justice for suit and collection on the 10th day of March, 1897, the note upon which said first mentioned judgment was recovered; but that no action was commenced thereon until the 13th day of March, 1897. S. W. Gainer swears that he had no knowledge of said note at the time of the conveyance to him. It is proved that the trade about the land was made by W. C. and S. W. Gainer on the morning of the 11th of March; that W. C. Gainer soon thereafter transferred the notes of S. W. Gainer, given as part consideration for the land, to said C. C. Coberly; that said land does not join the lands of S. W. Gainer; that he expended no money or labor on the sixty-nine acres

while he held title to the same; and that he conveyed it to his son-in-law after this suit had been commenced.

At the time the justice, D. E. Coberly, prepared the deed and took the acknowledgment of W. C. Gainer and wife thereto, it is not probable that he had received said notes for collection. He was a witness in the cause and was not interrogated as to that matter. He was in the habit of preparing deeds for people who sought his services for that purpose. It would be a far fetched inference that the justice then informed S. W. Gainer and W. C. Gainer that the note had been sent to him for collection. S. W. Gainer then owned two tracts of land, one containing ten, and the other one hundred acres. He is shown to have been solvent and good for his debts. He agreed to give $650.00 for the land. Two hundred and fifty dollars was in the stock of an oil company, which stock afterwards turned out to be worthless; but the four hundred dollars, being four-fifths of the value of the land, was collectable. It is further shown that, before the conveyance, W. C. Gainer had been talking to his uncle about selling the land so that he could go to his father-in-law, who lived in another county.

S. W. Gainer was solvent and amply able to pay the notes. In addition they were secured by the lien reserved on the land for which they were given. The deed was placed on record at the instance of the grantee, thus giving notice to any creditor of the grantor of the liability of the grantee. There was no concealment about any part of the transaction. S. W. Gainer, soon after he had obtained the deed, took possession of the land, except the dwelling house, which was reserved, as he says, by W. C. Gainer, until the following fall. He received the rents for the land for the year 1897. He also testifies most positively that he bought the land in good faith without any notice of the indebtedness of the grantor, W. C. Gainer, or notice or knowledge of his fraud or intention to fraud.

In opposition to S. W. Gainer's testimony that he had neither knowledge of the indebtedness of W. C. Gainer nor notice of his fraudulent intent, at the time of said conveyance, we have the equally positive evidence of J. N. B. Crim, that prior to the 11th day of March, 1897, he had a conversation with Gainer about the two notes, which he held, made by W. C. Gainer and others, one for $175.00, and the other for

$100.00, both executed in 1896; that he also then had another note for thirty dollars on the same parties; that he explained to Gainer these notes; that on the 20th day of April, 1897, Gainer gave, (confessed) a judgment in favor of witness before W. G. Keys, a justice, for $243.33, which judgment, by consent of S. W. Gainer, included said thirty dollar note. Witness further testifies that he talked to Gainer two or three times about these notes, and that Gainer assured him that he thought they were perfectly good. The plaintiff swears that S. W. Gainer had knowledge, before the 11th day of March, 1897, of the said note, which he held against W. C. Gainer and others upon which his said judgment was recovered; that he had talked to S. W. Gainer about it, and asked him to become surety for the debt. S. W. Gainer admits that he had heard "rumors" about the indebtedness of his nephew. Gainer is thus contradicted on this material point by two witnesses. It seems that S. W. Gainer was not plethoric of purse at that time. He did not pay a cent in cash to the grantor on the land. He paid nothing for the stock in the oil company. He was to have it in consideration of the lease that he executed to the company which never organized. C. C. Coberly says that, at the time he got the Gainer notes, he held other notes against his father-in-law for borrowed money which he had held for three or four years. On the 4th day of October, 1899, at the time S. W. Gainer conveyed the land to Coberly, he owed $315.00 of the purchase money therefor. By his agency, W. C. Gainer was enabled, for a time at least, to put the land, which doubtless induced plaintiff and others to give credit to him, out of the reach of his creditors. The conveyance made W. C. Gainer insolvent, and left nothing for his creditors, while his uncle profited $100.00 by the transaction. After he got the land, S. W. Gainer paid little or no attention to it. He expended no money or labor thereon, and remarked, when asked about the rents, "That he guessed he hadn't much in it any way." He says that his nephew talked to him about buying the land prior to the deed; but no reason is given why the deal was not then closed. It seems strange that on the morning after the note was sent to the justice for suit and collection, the terms of sale were so quickly agreed upon, and the deed so expeditiously executed, and conveyed by the grantee the next day

on horse back, twenty-one miles to the county seat to be recorded. Why was this seeming undue haste?

The uncle held the title to the land up to October 4, 1899, and then conveyed it to his son-in-law for the consideration of five hundred dollars, in reality, one hundred dollars more than he was to give for the land, because the $250.00 stock cost him nothing and was worthless. The reason given by him for this conveyance to his son-in-law is that he had discovered that he was unable to attend to the land, and could not hire hands, and that he wanted to pay his debts. He was, indeed, a long time in making this discovery. His deposition shows that he was about fifty-six years old when he took the deed. No change in his then condition up to the time when he parted with the land is shown. No reason is given why W. C. Gainer was not sworn as a witness to corroborate his uncle's statements. He certainly knew all about the same transactions. Perhaps, it was thought that little weight would be given to his testimony, if taken because of the plight in which he had placed himself. In *Stauffer* v. *Kennedy et al*, 47 W. Va. 714, 719, the Court says: "When a conveyance in favor of a relative leaves a man without means to satisfy his creditors it is the basis of a strong suspicion of fraud; it is *prima facia* fraudulent, and calls upon the grantee to furnish strong proof of the *bona fides* of the transaction." *Reynolds' Admrs.* v. *Gawthrop's Heirs*, 37 W. Va. 3; *Burt* v. *Timmons*, 29 W. Va. 441, 452; *Herzog* v. *Weiler*, 24 W. Va. 199; *Bartlett* v. *Cleavinger*, 35 W. Va. 720.

In *Ballard* v. *Chewning and others*, 49 W. Va. 508, 519; and in *Knight* v. *Nease et al*, decided at the present term, it is held: "It is not always necessary that direct affirmative or positive proof of fraud be given. It may be and usually is proved by circumstantial evidence. If the evidence is sufficient to satisfy the mind and conscience of the existence of the fraud, it will be sufficient although it does not lead to a conviction of absolute certainty. The fraud need not be proved beyond a reasonable doubt."

The evidence contained in the record, and the fair inferences deducible therefrom, lead us to the conclusion that S. W. Gainer did have knowledge of the intent of W. C. Gainer to delay, hinder and defraud the plaintiff and other creditors at the time of said conveyance. We are of opinion that the said deed

executed by W. C. Gainer and wife to S. W. Gainer, bearing date on the 11th day of March, 1897, should be cancelled and set aside as to the plaintiff's said demands, and that said six-ty-nine acres of land therein described is liable therefor.

The circuit court therefore erred in dismissing the plaintiff's bill, and awarding costs against him. For the reasons stated, the decree of the circuit court aforesaid is reversed, and the cause remanded to that court for further proceedings to be had in said cause therein, in accordance with the views herein ex-pressed, and further according to the principles governing courts of equity.

*Reversed.*